2005-NMCA-070

113 P.3d 877

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Gilbert TORRES, Jr., Defendant– Appellant.**

**No. 24103.**

Court of Appeals of New Mexico.

April 7, 2005.

Patricia A. Madrid, Attorney General, M. Anne Kelly, Assistant Attorney General, Albuquerque, for Appellee.

Todd Hotchkiss, Frechette & Associates, P.C., Albuquerque, for Appellant.

*OPINION*

WECHSLER, J.

{1} Defendant appeals his convictions for second degree murder and tampering with evidence. On appeal, Defendant argues that plain error occurred due to his trial counsel's failure to file a motion to suppress evidence because the police did not obtain a search warrant prior to collecting evidence from Defendant's home. In the alternative, Defendant argues that his counsel was ineffective in failing to file the motion. Additionally, Defendant argues that the trial court erred in allowing a witness to testify to a statement made by the victim over Defendant's hearsay objection, that it erroneously admitted testimony of two police officers, and that statements made by the prosecutor during opening statements and closing arguments constituted fundamental error. After the State filed its brief, Defendant filed a motion to supplement the record and to allow the State the opportunity to address the supplemental record in further briefing. We now deny the motion and affirm.

*Factual and Procedural History*

{2} On December 3, 2001, police officers responded to a possible suicide call at Defendant's home. Officer Dino Roden, one of the responding officers, testified that he could see inside through a glass storm door as he approached the home. He noticed debris and broken pottery on the floor and blood on the carpet. As Officer Roden was about to open the door, Defendant approached and stated "well she finally did it." Officer Roden informed Defendant that he had been dispatched to investigate a suicide and asked where "she" was. Defendant informed the officer that the victim, Defendant's estranged wife, was in the back bedroom.

{3} Officer Roden and Officer Joshua Perea, who arrived shortly after Officer Roden, located the victim in the back bedroom on the bed. She was dead with an apparent shotgun wound to her chest. She had a four-to-five-inch gash on her upper left thigh from which blood flowed up rather than down. Her hands were badly lacerated, and her right thumb, which was missing, was later found beneath a night stand. She had blood stains on the bottom of one of her feet. There were also marks on her throat and around the back side of her neck, as well as evidence of retinal hemorrhaging. The officers saw a 12–gauge shotgun leaning next to the victim. It had a badly damaged barrel that "was peeled back like a banana." There was a wooden backscratcher next to the shotgun. They also saw pieces of shrapnel from the shotgun barrel on the wall in the bedroom and pieces of duct tape and fibers of blue cloth attached to the shotgun. There were shredded pieces of a potato on the ceiling, the victim's body, and the shotgun.

{4} After making these observations, the officers cleared the house, called New Mexico state police crime scene investigators, and set up crime scene tape. Officer Perea stated that Defendant did not appear upset at this point, and, in fact, went outside and began drinking a beer.

{5} The officers questioned Defendant's neighbors. Witnesses stated that they heard yelling coming from Defendant's residence, followed by a loud noise, and that they observed a man exit the residence and throw a bag over the fence into another yard approximately ten minutes before the officers arrived. Upon searching the area described by the witnesses, the officers recovered a blue towel "covered with duct tape." The officers also located a piece of duct tape underneath the bed where the victim was found and a roll of duct tape in one of the other rooms. The evidence indicated to the officers that Defendant had strangled the victim, then used the duct tape to attach the towel to the butt of the weapon and to secure a potato to the end of the barrel, presumably as a silencer. The evidence also indicated to police that Defendant had staged the suicide scene.

{6} Dr. Jeff Nine, a forensic pathologist with the Office of the Medical Investigator, found metal fragments, pieces of duct tape, and potato fragments in the vicinity of the shotgun wound. He testified at trial that the wounds on the victim's hands indicated that her hands were in front of the barrel of the weapon, but not necessarily grabbing it, as it was fired. He concluded that the victim died from a shotgun wound to her chest. Howev-

er, he also stated that she had been beaten and strangled prior to being shot, but he did not know if the strangulation rendered her unconscious. When questioned regarding the possibility of the victim having committed suicide, Dr. Nine stated: "I don't believe there is any way she could [have] done this [by] herself."

{7} Shortly after the police responded to the incident, Defendant was transported to police headquarters for questioning; he was not yet under formal arrest. Photographs of Defendant, taken at the police station, showed bloodstains on his clothing and a cut on his right hand. There was also blood on Defendant's boot. While awaiting questioning, Defendant stated, "I can't believe she did that." Defendant waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and consented to giving a videotaped statement to police. He stated that the victim had a long history of drug abuse. He also stated that she had threatened to commit suicide previously and that she had pointed the shotgun at Defendant's friend on a prior occasion. When initially questioned by police, Defendant reiterated his account that the victim had committed suicide following an argument with Defendant. However, when confronted with physical evidence that was inconsistent with suicide, Defendant varied his story, stating that he and the victim had struggled over the gun in the bedroom and that it had accidentally discharged.

{8} At some point after the interview, the police obtained a search warrant and "processed the scene." Defendant was formally arrested, indicted, and charged with first degree murder and tampering with evidence. After a jury trial, Defendant was convicted of second degree murder and tampering with evidence.

*Plain Error*

{9} Defendant argues that plain error occurred due to his counsel's failure to file a motion to suppress evidence because police officers searched his residence without a warrant. We may take notice of plain errors affecting substantial rights even though a defendant did not object to the errors at trial. *State v. Gutierrez*, 2003–NMCA–077, ¶ 19, 133 N.M. 797, 70 P.3d 787. The plain error doctrine is not as strict as the doctrine of fundamental error in its application. *State v. Paiz*, 1999–NMCA–104, ¶ 28, 127 N.M. 776, 987 P.2d 1163. Therefore, "we need not determine that there has been a miscarriage of justice or a conviction in which the defendant's guilt is so doubtful that it would shock the conscience of the court to allow it to stand." *State v. Lucero*, 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993). Nevertheless, because the plain error rule is an exception to the general rule that parties must raise timely objection to improprieties at trial, plain error is to be used sparingly. *Paiz*, 1999–NMCA–104, ¶ 28, 127 N.M. 776, 987 P.2d 1163. The plain error rule only applies to errors in evidentiary matters. *Gutierrez*, 2003–NMCA–077, ¶ 19, 133 N.M. 797, 70 P.3d 787. We apply the rule only if we have "grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *Id.*

{10} Defendant relies on the United States Supreme Court's holdings in *Flippo v. West Virginia*, 528 U.S. 11, 14, 120 S.Ct. 7, 145 L.Ed.2d 16 (1999) (per curiam), and *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), in arguing that the officers' failure to secure a search warrant until December 4, 2001 and his counsel's failure to file a motion to suppress evidence affected his substantial rights so as to cause plain error. As Defendant acknowledges, *Flippo* dealt with the denial of the defendant's motion to suppress based on a "murder scene exception" to the Fourth Amendment. *Flippo*, 528 U.S. at 12–14, 120 S.Ct. 7. The Court reversed the lower court, and relying on *Mincey*, found that there was no murder scene exception and that there were no exigent circumstances present. *Id.* The defendants in *Flippo* and *Mincey* did not argue that plain error occurred or that their counsel was ineffective for failing to file a motion to suppress, because counsel in both cases filed pretrial motions to suppress. *See Flippo*, 528 U.S. at 12, 120 S.Ct. 7; *Mincey*, 437 U.S. at 389, 98 S.Ct. 2408. Therefore, the Supreme Court did not have to perform

the completely different analysis necessary to determine whether plain error occurred when the evidence was admitted by the trial court.

{11} Because plain error does not occur in a vacuum, we interpret Defendant's argument to mean that the trial court committed plain error in failing to suppress evidence *sua sponte.* No New Mexico case has directly addressed this issue. However, in analogous circumstances, the Tenth Circuit in *United States v. Meraz–Peru,* 24 F.3d 1197 (10th Cir.1994), used an approach we consider persuasive. The defendant in *Meraz–Peru* claimed that his conviction for possession of marijuana should be reversed on appeal because he was stopped without reasonable suspicion. *Id.* at 1198. He never filed a motion to suppress the evidence at his trial, and the court analyzed the issue for plain error. *Id.* In affirming the defendant's conviction, it stated that "[a] reliable appellate determination concerning the [merits of a motion to suppress] is not possible in the absence of factual findings." *Id.* It reasoned that when "the error defendant asserts on appeal depends upon a factual finding the defendant neglected to ask the district court to make, the error cannot be 'clear' or 'obvious' unless the desired factual finding is the only one rationally supported by the record below." *Id.* (internal quotation marks and citation omitted).

{12} Similarly, in this case, the factual finding that the police unconstitutionally searched Defendant's home is not the only one rationally supported by the record. On the contrary, the facts in the record indicate that Defendant called the police reporting the alleged suicide and that he may have consented to their presence in his home. During his taped statement to the police, Defendant stated "I called . . . first and said [the victim] shot herself. . . . I called the police and you were there." Agent Ortiz stated at trial that he was suspicious and that he knew they were "going to need a search warrant." During the cross-examination of Agent Ortiz, Defendant's counsel stated: "But prior to that search warrant [Defendant] had given consent to search his house, correct?" Agent Ortiz responded in the af-

firmative. The record does not otherwise give us an indication of the validity of the search warrant. Therefore, because a finding that the police illegally searched Defendant's home is not the only one rationally supported by the record, there was no plain error.

*Ineffective Assistance of Counsel*

█ {13} Defendant additionally argues that his trial counsel was ineffective because no reasonable strategy existed for his counsel's failure to file a motion to suppress evidence. To prevail on this argument, Defendant has the burden to establish a prima facie claim of ineffective assistance. *State v. Roybal,* 2002–NMSC–027, ¶ 19, 132 N.M. 657, 54 P.3d 61. Defendant may only establish a prima facie claim by showing that his counsel's performance fell below the performance of a reasonably competent attorney and that his counsel's deficient performance prejudiced Defendant. *Patterson v. LeMaster,* 2001–NMSC–013, ¶ 17, 130 N.M. 179, 21 P.3d 1032. Within the context of a failure to file a motion to suppress evidence, a defendant must establish that the facts support the motion and that a reasonably competent attorney could not have decided that the motion was unwarranted. *Id.* ¶ 19. To determine whether the facts support the motion, we evaluate the facts present in the record. *See Roybal,* 2002–NMSC–027, ¶ 19, 132 N.M. 657, 54 P.3d 61 (stating that "[i]f facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition"); *see also State v. Wilson,* 117 N.M. 11, 18, 868 P.2d 656, 663 (Ct.App.1993).

█ {14} Similar to our analysis of Defendant's plain error claim, the record is devoid of facts from which we could determine the effectiveness of Defendant's counsel with regard to whether Defendant consented to a search or when a search warrant was required. Defendant argues that the State merely claimed "perfunctorily at trial that [Defendant] consented to the warrantless search of his residence." Our review of the record indicates that the issue regarding consent was simply never raised. We agree

with Defendant that the State has the burden to show that the search of Defendant's home fell under an exception to the warrant requirement imposed by the Fourth Amendment. *See State v. Mann*, 103 N.M. 660, 663, 712 P.2d 6, 9 (Ct.App.1985). However, the State's burden does not arise until Defendant puts facts into issue questioning the validity of the search. *Id.*

{15} *Flippo* does not require us to conclude that counsel's failure to file a motion to suppress was per se unreasonable as Defendant argues. *See Flippo*, 528 U.S. at 13, 120 S.Ct. 7. As we previously stated, the defendant in *Flippo* filed a motion to suppress evidence. *Id.* Defendant appears to be arguing the merits of a motion to suppress evidence he never made. Instead, Defendant must first point to facts in the record that indicate his counsel's failure to file the motion makes this one of those "rare" cases of prima facie ineffective assistance of counsel. *Cf. State v. Baca*, 1997–NMSC–059, ¶ 25, 124 N.M. 333, 950 P.2d 776.

{16} This case is also distinguishable from *Patterson*, upon which Defendant relies for the proposition that a reasonably competent attorney would not have decided that the motion was unwarranted. In *Patterson*, the defendant argued that his counsel was ineffective for failing to file a motion to suppress evidence obtained during a "showup" identification. *Patterson*, 2001–NMSC–013, ¶ 15, 130 N.M. 179, 21 P.3d 1032. Our Supreme Court, in reversing the defendant's conviction, relied on facts contained in the record which supported the motion to suppress. *Id.* ¶ 26 ("It is likely that there was factual support for a motion to suppress the identifications."). The Court stated that the record indicated that the showup identification was highly suggestive and likely "lacked the indicia of reliability necessary to outweigh the suggestiveness of that procedure." *Id.* The Court went on to state that there were not any facts in the record "which might have led a reasonably competent attorney not to file a motion to suppress." *Id.* ¶ 27.

{17} As we have discussed, the record in this case indicates that Defendant's trial counsel believed Defendant had consented to the entry of police into his home. It also implies that Agent Ortiz was immediately suspicious and at some point realized that a search warrant would be needed. However, except to the extent that Defendant apparently called the police to report the suicide and let them in when they arrived, we cannot determine from the record the extent of Defendant's consent or the time the police needed to obtain a warrant. *See, e.g., State v. Duarte*, 1996–NMCA–038, ¶ 25, 121 N.M. 553, 915 P.2d 309 (stating that a failure to file a non-meritorious motion is not ineffective assistance); *State v. Baca*, 115 N.M. 536, 544, 854 P.2d 363, 371 (Ct.App.1993) (stating that trial counsel's strategy and tactics will not be second-guessed on appeal).

{18} Moreover, even if Defendant could show that his counsel's performance fell below that of a reasonably competent attorney, he has also not shown that his counsel's failure to file the motion prejudiced his defense such that "there was a reasonable probability that the outcome of the trial would have been different." *State v. Reyes*, 2002–NMSC–024, ¶ 48, 132 N.M. 576, 52 P.3d 948. Defendant argues that he was prejudiced because (1) he was not inclined to enter a plea, (2) the evidence was not strong, and (3) "the motion to suppress 'was crucial because it could have excluded key evidence.'" A warrant was obtained to search Defendant's home, and Defendant fails to state with any specificity which evidence, if any, police collected prior to obtaining the warrant. Given this lack of specificity, Defendant's allegation of prejudice amounts to a mere assertion. *See In re Ernesto M., Jr.*, 1996–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318 (stating that "[a]n assertion of prejudice is not a showing of prejudice"). We reject Defendant's claim of ineffective assistance of counsel.

*Hearsay Issue*

{19} Defendant additionally argues that the trial court erred in allowing Officer Perea to testify to a statement made by the victim. Officer Perea testified that he was dispatched on a domestic violence call to Defendant's residence on October 14, 2001, nearly two months prior to the incident at issue.

Because it was Defendant's home and Defendant indicated he wanted the victim to leave, Officer Perea escorted the victim off the premises. As she was leaving, the victim stated, "next time you guys see me you're going to find me dead." The State responded to Defendant's hearsay objection by arguing that the statement addressed the victim's state of mind and was allowed under Rule 11–803(C) NMRA.

{20} Defendant argues for the first time in his reply brief that we must address the applicability of the United States Supreme Court's recent holding in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), with regard to this issue. Essentially, Defendant argues that the victim's statement to Officer Perea was "testimonial" under *Crawford* and therefore must be barred because its admission violated Defendant's Sixth Amendment right to "confront and cross examine the witness." However, at trial, Defendant did not base his objection to the testimony on constitutional grounds, but only objected to the testimony at issue on hearsay grounds. The question of whether a defendant was denied the right to confrontation "may not be raised for the first time on appeal." *State v. Lucero*, 104 N.M. 587, 590–91, 725 P.2d 266, 269–70 (Ct. App.1986) (refusing to reach confrontation clause issue founded on general hearsay objection and argument that the statement at issue did not fall within any exception to the hearsay rule). An objection raising the question must be "sufficiently specific to alert the trial court to the claimed constitutional errors." *Id.* at 591, 725 P.2d at 270. Like *Lucero*, Defendant's hearsay objection was too broad to raise a confrontation clause issue. *See id.* The district court was only required to rule on the objection Defendant made: that the statement was not admissible under the Rule 11–803(C) hearsay exception. *See Lucero*, 104 N.M. at 591, 725 P.2d at 270.

{21} As to the issue of whether the district court correctly ruled that the statement was admissible under Rule 11–803(C), we review the admission of hearsay testimony under an exception to the hearsay rule for abuse of discretion. *State v. McClaugherty*, 2003–NMSC–006, ¶ 17, 133 N.M. 459, 64 P.3d 486; *State v. Mora*, 1997–NMSC–060, ¶ 51, 124 N.M. 346, 950 P.2d 789. A trial court abuses its discretion when its "ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Simonson*, 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983).

{22} The State offered the testimony as a hearsay exception under Rule 11–803(C). Rule 11–803(C) states:

> **Then existing mental, emotional or physical condition.** A statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will.

{23} Rule 11–803(C) is applicable in situations in which a defendant puts an alleged victim's state of mind at issue by arguing self-defense or suicide. *State v. Baca*, 120 N.M. 383, 389, 902 P.2d 65, 71 (1995); *see also State v. Swavola*, 114 N.M. 472, 478, 840 P.2d 1238, 1244 (Ct.App.1992) (stating that an utterance by the victim is relevant to the victim's state of mind under Rule 11–803(C) when the defendant argues self-defense and the statement tends to reduce the likelihood that the victim was the initial aggressor). Defendant took such an approach in this case. His statements to police raised issues of suicide, accidental shooting, and self-defense. He requested and received jury instructions for self-defense and second degree murder. The statement "the next time you guys see me you're going to find me dead" was offered to show that the victim feared Defendant and was unlikely to attack him or commit suicide. Yet, due to its ambiguity, the statement arguably helped Defendant as much as it did the State because the jury could have just as easily interpreted the statement to mean the victim intended to commit suicide. Despite its ambiguity, the statement was relevant to the issues of suicide and self-defense, and the court did not abuse its discretion in admitting it.

{24} This case is not like *Baca*. In that case, a young victim had made the statement that she feared her father. *Baca*, 120 N.M. at 389, 902 P.2d at 71. Our Supreme Court held that the statement was not admissible under Rule 11–803(C) because it was not offered to show the victim's state of mind and was therefore irrelevant and prejudicial. *Baca*, 120 N.M. at 389, 902 P.2d at 71. The Court expressed concern that the statement created a substantial risk that the jury could consider the victim's fear as "somehow reflecting on [the] *defendant's* state of mind rather than the victim's." *Id.* at 389–90, 902 P.2d at 71–72 (internal quotation marks and citation omitted). The defendant in *Baca* did not raise the issue of self-defense.

{25} Defendant, in his reply brief, argues that there is a reasonable probability that he was prejudiced by the statement because the State used it to headline its closing argument. However, we cannot say that the trial court abused its discretion in allowing the statement given the admissibility of the statement under Rule 11–803(C) and the wide latitude afforded prosecutors and defense counsel during closing argument. *See State v. Venegas*, 96 N.M. 61, 63, 628 P.2d 306, 308 (1981).

■ {26} Based on *State v. Woodward*, 121 N.M. 1, 908 P.2d 231 (1995), the dissent would hold that the statement is best construed as the victim's belief that Defendant was going to kill her and is therefore inadmissible hearsay. In *Woodward*, an appeal of a conviction of first degree murder and other charges, a psychologist testified that the victim had told him that the defendant "is going to kill me." *Id.* at 8–9, 908 P.2d at 238–39. Our Supreme Court, relying on *United States v. Joe*, 8 F.3d 1488 (10th Cir. 1993), distinguished a statement that a victim was afraid from a statement that the defendant would kill the victim. *Woodward*, 121 N.M. at 9, 908 P.2d at 239. It held that the former was admissible as a "statement of then-existing mental, emotional, or physical condition," but that the latter was inadmissible because it was a "statement of memory or belief." *Id.* (internal quotation marks and citation omitted). However, Defendant did not raise this distinction in the trial court and

does not argue it on appeal. We therefore do not address it. *See State ex rel. Human Servs. Dep't v. Staples*, 98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (stating that appellate courts risk "overlooking important facts or legal considerations when they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailor the case to fit within their legal theories" in cautioning this Court against ignoring the arguments presented and searching for alternative grounds for a decision) (internal quotation marks and citation omitted); *State v. Ferguson*, 111 N.M. 191, 196, 803 P.2d 676, 681 (Ct.App.1990) ("Courts should not take it upon themselves to raise, argue, and decide legal issues overlooked by the lawyers."). In addition, we note that there was no issue in *Woodward* as to self-defense or suicide.

*Agent Ortiz's Opinion Testimony*

■ {27} At trial, Agent Ortiz was accepted as an expert in blood stain pattern analysis and crime scene reconstruction without objection. At the beginning of his testimony, Agent Ortiz stated that "Crime Scene Reconstruction is to evaluate the evidence at the scene. Gather physical evidence and you evaluate it to determine to arrive at a conclusion as to what occurred, what happened at the scene." He also testified that blood splatter analysis will "assist you in supporting or refuting any statements by witnesses or defendants." He stated that the evidence did not support Defendant's assertion that the victim walked down the hallway to the bedroom because there were no carpet fibers on the bottom of her bare feet. On the contrary, Agent Ortiz stated that the evidence supported the conclusion that the victim was carried into the bedroom. He also stated that there were pieces of duct tape and potato on the victim, indicating that those substances were covering the barrel of the shotgun. Agent Ortiz was also able to track the trajectory of the flight of the victim's thumb and opined that she was propped up on the bed when she was shot.

{28} Agent Ortiz concluded that the victim could not have committed suicide because the lacerations on her hands indicated that they were near the barrel when the shotgun

was fired, and therefore, she could not have pulled the trigger. He opined that the covering of the weapon with duct tape and a towel, in addition to the presence of the potato, were all consistent with an effort to prevent gunshot residue from depositing on the person who fired the weapon. He stated that Defendant's claim that the victim committed suicide was not consistent with the physical evidence. Defendant did not object to these statements. Agent Ortiz then gave a synopsis as to the manner in which he believed the crime occurred based on the evidence. Defendant objected and the court asked the prosecutor to "move along." Agent Ortiz opined that Defendant fired the shotgun and used the potato as a silencer and then called the police because of the loud explosion. He stated that "physical evidence does not lie" and that the evidence indicated the victim was killed deliberately.

{29} Defendant argues that the trial court erred in overruling his objections to Agent Ortiz's testimony. We review the trial court's admission of Agent Ortiz's testimony for abuse of discretion and we will not disturb its evidentiary ruling absent a clear abuse of that discretion. *State v. Stanley*, 2001–NMSC–037, ¶ 5, 131 N.M. 368, 37 P.3d 85.

{30} Defendant relies on *Lucero* in support of his argument that the trial court erred in admitting the testimony because Agent Ortiz "improperly commented directly on the credibility of [Defendant]." *Lucero* is distinguishable from this case. The expert witness in *Lucero* was a psychologist who examined one of the complaining witnesses. *Lucero*, 116 N.M. at 451, 863 P.2d at 1072. The expert testified that the complaining witness exhibited symptoms of post traumatic stress syndrome caused by sexual abuse. *Id.* at 451–52, 863 P.2d at 1072–73. The expert also commented directly on the credibility of the complaining witness in stating that the complaining witness was consistent both in identifying the defendant as the abuser and in referring to the rooms in which the alleged abuse occurred. *Id.* at 452, 863 P.2d at 1073. The expert also inappropriately commented on the demeanor of the complaining witness, which the expert claimed changed when the complaining witness talked about the alleged sexual abuse she had endured. *Id.* The expert testified that "if the complainant were not telling the truth, she probably would have reacted differently than she did." *Id.*

{31} Our Supreme Court held that the trial court committed plain error in admitting the testimony and stated that an expert commenting on the credibility of the alleged victim of sexual abuse was improper. *Id.* at 455, 863 P.2d at 1076. The Court, relying on *State v. Alberico*, 116 N.M. 156, 861 P.2d 192 (1993), stated that the expert's testimony was improper because it went outside the bounds of admissible testimony concerning post traumatic stress disorder, which it stated was identical to post traumatic stress syndrome. *Lucero*, 116 N.M. at 454, 863 P.2d at 1075. It reasoned that "[w]hile PTSD testimony may be offered to show that the victim suffers from symptoms that are consistent with sexual abuse, it may not be offered to establish that the alleged victim is telling the truth; that is for the jury to decide." *Id.* (internal quotation marks and citation omitted).

{32} In this case, Agent Ortiz, as a qualified crime scene reconstructionist, gave his opinion as to the credibility of Defendant's version of events. He did not directly bolster the testimony of any of the State's other witnesses. We agree with the State that *State v. Landgraf*, 1996–NMCA–024, 121 N.M. 445, 913 P.2d 252, is directly on point. The defendant in *Landgraf* had been charged with multiple crimes for causing an automobile crash in which three people died. *Id.* ¶ 1. The prosecutor offered the testimony of police officers who stated that the defendant's "complex motor reactions demonstrated deliberation." *Id.* ¶ 20. We stated that the defendant had misconstrued *Alberico* and acknowledged that our Supreme Court had "recognized and acknowledged the continuing validity of its prior decisions that expert testimony is admissible even if it touches upon an ultimate issue to be decided by the trier of fact." *Id.* (internal quotation marks and citation omitted). We further stated that the jury is "free to disregard any or all such opinion testimony" and had been so instructed. *Id.*

{33} Agent Ortiz's testimony was similar to that of the police officer in *Landgraf.* His testimony touched upon the ultimate issue to be decided by the trier of fact, whether Defendant was being truthful in his assertions that the victim committed suicide or attacked him. The jury was instructed that it could entirely disregard the testimony of any or all expert witnesses. Therefore, we cannot characterize the trial court's admission of Officer Ortiz's testimony as "clearly untenable or not justified by reason." *See Stanley,* 2001–NMSC–037, ¶ 5, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citation omitted).

{34} Defendant additionally asserts that Officer Perea's testimony also inappropriately interpreted the evidence to implicate Defendant. We do not reach this issue because Defendant did not brief it. *State v. Desnoyers,* 2002–NMSC–031, ¶ 11, 132 N.M. 756, 55 P.3d 968 (stating that issues not argued and supported by authority deemed abandoned). Similarly, Defendant argues that his "constitutional rights to a fair trial and a jury trial under the Sixth Amendment to the U.S. Constitution and Article II, § 14 of the New Mexico Constitution were violated" because of the admission of Agent Ortiz's statements. However, Defendant cites to no authority and also fails to brief the manner in which either constitution was implicated. *See Desnoyers,* 2002–NMSC–031, ¶ 11, 132 N.M. 756, 55 P.3d 968. We find no error in the trial court's admission of the testimony.

*Prosecutor's Assertions During Opening Statement*

{35} Defendant additionally argues that assertions made by the prosecutor during opening statement constitute fundamental error. At the end of his opening statement, the prosecutor asserted:

Just as you have taken an oath and have raised your hand to fairly and truly judge this case, on behalf of the people of the State of New Mexico, I promise you that Ms. Garcia and myself will conduct our case as fairly and as honestly and as truthfully as possible.

{36} Because Defendant did not object to this statement, we only review for fundamental error. *State v. Gonzales,* 113 N.M. 221, 229, 824 P.2d 1023, 1031 (1992); *State v. Diaz,* 100 N.M. 210, 212, 668 P.2d 326, 328 (Ct.App.1983). The doctrine of "fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Dartez,* 1998–NMCA–009, ¶ 21, 124 N.M. 455, 952 P.2d 450 (internal quotation marks and citation omitted). In the context of analyzing a prosecutor's alleged improper statements, "fundamental error arises when the prosecutor engages in misconduct that compromises the defendant's right to a fair trial." *State v. Rojo,* 1999–NMSC–001, ¶ 55, 126 N.M. 438, 971 P.2d 829.

{37} Defendant's reliance on *Diaz* and *Baca* is also misplaced with regard to this issue. We agree with Defendant that it is improper for a prosecutor to "precondemn a defendant on the basis of the authority he represents." *Diaz,* 100 N.M. at 213, 668 P.2d at 329; *Baca,* 120 N.M. at 392, 902 P.2d at 75. However, the prosecutor's conduct in this case did not rise to the same odious level as the cases upon which Defendant relies.

{38} In *Diaz,* the prosecutor stated:

The taxpayers pay me, pay the judge, even pay Mr. Lane, and they're gonna pay you for being here two days.

Please remember ladies and gentlemen, that I represent the State, and just like [the defendant] is represented by Mr. Lane, I represent you and all the other people in the Sixth Judicial District which covers three counties. You are my clients. I'm here to protect your rights. I'm here to protect the security of your homes, your places of business. The people of New Mexico come in here and presented this case to you * * *.

When you start putting judges on trial, Supreme Court Justices, prosecutors who represent the people * * *.

Just remember, the style of this case is State of New Mexico versus [the defendant] * * *. And the people of this dis-

trict ask you to find him guilty of both counts.

*Diaz,* 100 N.M. at 213, 668 P.2d at 329. In holding that error occurred requiring reversal, we stated that the prosecutor's improper statements were "substantial" and that he had made "overextensive references to the authority he represents." *Id.* at 213, 215, 668 P.2d at 329, 331. In addition, we stated that it was the combined effects of these comments in addition to the prosecutor's other pronounced and persistent misconduct which likely had "a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." *Id.* at 215, 668 P.2d at 331 (internal quotation marks and citation omitted).

{39} In *Baca,* the prosecutor improperly told the jury that he had a higher ethical duty than defense counsel because he, as a prosecutor, was "bound by law to seek the truth," whereas the defendant's counsel, as a criminal defense attorney, was not. *Baca,* 120 N.M. at 392, 902 P.2d at 74. Our Supreme Court, in reversing the defendant's convictions based on cumulative error, admonished the state to avoid making the same improper statements on remand. *Id.* However, it did not factor these comments into its cumulative error determination and expressly stated that they did not amount to fundamental error. *Id.*

{40} In this case, the prosecutor did not engage in the extensive and egregious misconduct admonished in *Diaz* and *Baca.* He merely stated that he promised to present his case "honestly" and as "truthfully" as possible. While arguably improper, the prosecutor's statements during opening statement were not fundamental error.

*Prosecutor's Statements During Closing Argument*

■ {41} During the State's rebuttal closing argument, the prosecutor personally admonished Defendant, stating that Defendant "continues to disgrace and deface her memory. Shame on you, Gilbert Torres! And I hope you feel my outrage. I hope that as a society . . . ." Defense counsel objected, and the trial court told the prosecutor to "tone it down." The prosecutor then stated:

And as a society we should feel outraged. We are a nation of law, not of men. The true test of our greatness is how well we treat the least of our citizens. The true test of our greatness is how we uphold the principle that everybody's entitled to life, liberty and the pursuit of happiness.

Defendant argues, relying on *Diaz,* 100 N.M. at 214, 668 P.2d at 330, *Ferguson,* 111 N.M. at 194, 803 P.2d at 679, and *State v. Vallejos,* 86 N.M. 39, 42, 519 P.2d 135, 138 (Ct.App. 1974), that the trial court erred in overruling Defendant's objection to the prosecutor's statements. We disagree.

{42} Because Defendant objected to the statements, we review for abuse of discretion. *State v. Clark,* 1999–NMSC–035, ¶ 52, 128 N.M. 119, 990 P.2d 793. Our Supreme Court has stated:

The prosecution is allowed reasonable latitude in closing argument. The district court has wide discretion to control closing argument, and there is no error absent an abuse of discretion or prejudice to defendant. . . . The question on appeal is whether the argument served to deprive defendant of a fair trial.

*State v. Chamberlain,* 112 N.M. 723, 729, 819 P.2d 673, 679 (1991) (citations omitted). The defendant in *Ferguson* objected to the prosecutor's statement of "I think you should return . . . a guilty verdict, for a crime here. Yes." *Ferguson,* 111 N.M. at 195, 803 P.2d at 680. The defendant immediately moved for a mistrial arguing that the words "I think" in reference to the verdict the jury was to give was an improper injection of personal opinion into the case by the prosecutor. *Id.* In upholding the trial court's grant of the motion for mistrial, we stated that a key component of our reasoning was that the standard of review was deferential to the trial court. *Id.* (stating that deferring to the trial court in these situations makes sense because "[t]he trial court judge was present, and therefore she was in a better position to resolve this question than we are"). We acknowledged that the trial court could have reasonably decided either way on the issue and therefore affirmed its ruling. *Id.* at 196, 803 P.2d at 681.

{43} In this case, Defendant objected to the prosecutor's statement and the trial court expressed its concern. Defendant did not move for a mistrial or request any curative instruction to the jury. The trial court did not abuse its discretion by not taking further action.

{44} This case is also distinguishable from *Diaz* and *Vallejos*. In both of those cases, the prosecutors made multiple improper comments, and we based our holdings on cumulative error. *Diaz*, 100 N.M. at 215, 668 P.2d at 331; *Vallejos*, 86 N.M. at 42, 519 P.2d at 138. Moreover, in this case, the State presented evidence that Defendant tried to cover up the incident, repeatedly attempted to portray the victim in a negative light by referring to her drug use, and changed his story at least twice when questioned about the shooting by police. It would not have been an abuse of discretion for the trial court to have ruled that the prosecutor's statements that Defendant continued to disgrace the victim's memory were a fair comment on the evidence. *See State v. Lamure*, 115 N.M. 61, 67, 846 P.2d 1070, 1076 (Ct.App.1992) ("Comments on the evidence are not error or fundamental error."). Given the facts of this case and our deferential standard of review, the trial court did not abuse its discretion in allowing counsel's statements during closing argument.

*Cumulative Error*

{45} Finally, Defendant's claim of cumulative error also fails because the trial court did not commit the many errors Defendant claims were cumulative. *State v. Perea*, 2001–NMCA–002, ¶ 26, 130 N.M. 46, 16 P.3d 1105.

*Conclusion*

{46} For the foregoing reasons, we affirm Defendant's convictions for second degree murder and tampering with evidence.

{47} **IT IS SO ORDERED.**

PICKARD, J., concurs.

MICHAEL E. VIGIL, Judge (concurring in part and dissenting in part).

VIGIL, Judge (concurring in part and dissenting in part).

{48} I concur with the majority opinion in all respects except its conclusion that the victim's hearsay statement that, "next time you guys see me you're going to find me dead" was admissible under Rule 11–803(C) as a state of mind exception to the hearsay rule. I conclude that the statement was not admissible into evidence under Rule 11–803(C) and that its admission into evidence constituted reversible error.

{49} Police Officer Joshua Perea was the second officer to arrive at Defendant's home on December 3, 2001. He was also the State's second witness. Before Officer Perea was asked about the events of December 3, 2001, he testified about an incident which occurred on October 14, 2001, nearly two months before. Officer Perea testified he was back-up on a domestic violence call to Defendant's home involving Defendant and the victim. "[W]e walked into the house and the house was kind of [in] disarray. Looked like a fight had taken place." Officer Perea related that Defendant and the victim had both been drinking and Defendant was stating that he wanted the victim out of the house, that he was tired of her, and did not want a relationship with her anymore. The following then occurred:

[PROSECUTOR]: Uh, did you get an opportunity to speak with [victim] that day in October?

OFFICER PEREA: I don't recall speaking with her. I was there listening as she was making comments on who did. I know we did give her some uh, information about places that she could stay to get out of there. Anything from a hotel to a domestic shelter.

[PROSECUTOR]: And is there anything that she directly said that evening.

[DEFENSE COUNSEL]: Objection your Honor, hearsay.

[PROSECUTOR]: Goes to victim's state of mind.

JUDGE: Overruled, go ahead.

[PROSECUTOR]: Okay and can you tell us what was said that evening?

OFFICER PEREA: After they were done loading the car with the stuff, we were all getting ready to leave and she was getting off from the couch, just before she got up she made a statement uh, next time you guys see me you're going to find me dead.

[PROSECUTOR]: And how did she appear to you that evening?

OFFICER PEREA: She seemed kind of groggy, like she wasn't really upset, she wasn't hyperactive like I honestly she may have possibly be[en] under the influence of something, but I wasn't completely sure.

[PROSECUTOR]: Do you know if she smelled like alcohol that evening or?

OFFICER PEREA: Yes she had been drinking.

[PROSECUTOR]: And did you ask anything of her son in response?

OFFICER PEREA: Her son was going off I believe the whole time. He made a comment, come on Gilbert tell them how you are threatening to get your hells angels friends to kill my mom or something like that.

[DEFENSE COUNSEL]: Judge.

JUDGE: Sustained.

[DEFENSE COUNSEL]: I and I move that that be stricken and that the jury disregard that statement.

JUDGE: It will be stricken and the jury will disregard it.

[PROSECUTOR]: Any thing else you did in response to the call in October of 2001?

OFFICER PEREA: Just made sure that she left the residence.

[PROSECUTOR]: And did Gilbert Torres ask her to leave that night?

OFFICER PEREA: Yes.

It was in the foregoing context during the State's case in chief before any statements of Defendant were admitted into evidence that the victim's hearsay statement, "next time you guys see me you're going to find me dead" was admitted as substantive evidence.

{50} The admission or exclusion of hearsay evidence lies within the discretion of the trial court. *State v. Balderama*, 2004–

NMSC–008, ¶ 46, 135 N.M. 329, 88 P.3d 845 ("We review the trial court's admission of hearsay statements for an abuse of discretion."). I conclude that admission of the evidence was erroneous and therefore an abuse of discretion. *See State v. Brown*, 1998–NMSC–037, ¶ 39, 126 N.M. 338, 969 P.2d 313 (stating an abuse of discretion in admitting evidence may occur when its admission is "obviously erroneous." (internal quotation marks and citation omitted)).

{51} The evidence was admitted under Rule 11–803(C), which provides that certain evidence is not excluded by the hearsay rule which includes:

C. Then Existing Mental, Emotional or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will.

*Id.*

{52} This rule allows a declarant's out of court statement of her then-existing state of mind or emotion to be admitted into evidence. However, as the majority agrees, the victim's statement is ambiguous. At best, it is only a declaration ("next time you see me I'll be dead"). In context, the victim might have been asserting to Officer Perea that the next time he saw her she would be dead because Defendant's "hells angels friends" were going to kill her. The statement is not an expression of a state of mind or emotion (such as "I am afraid"). The statement was therefore not admissible. Rule 11–802 NMRA ("Hearsay is not admissible except as provided by these rules or by other rules adopted by the Supreme Court or by statute.").

{53} The hearsay statement was inadmissible for the additional reason that it was irrelevant. "For an extrajudicial statement of a declarant's state of mind to be admissible, the state of mind must be relevant." *Baca*, 120 N.M. at 389, 902 P.2d at 71. The state of mind evidence must prove or negate

action or inaction of the declarant that is relevant to the case. The victim's state of mind may be relevant in issues of "(1) self defense (rebutted by extrajudicial declarations of the victim's passive state of mind), (2) suicide (rebutted by statements inconsistent with a suicidal bent), and (3) accident (rebutted by victim's fear of placing self in way of such harm)." *Id.* The majority suggests that the victim's statement was relevant because it related to a claim of suicide and self defense. I disagree.

{54} The State alleged that Defendant killed the victim with a deliberate intent, and charged him with first degree murder. To prove its case of first degree murder the State introduced two recorded statements Defendant gave to the police. Initially, Defendant contended that he and the victim had argued, victim cut her leg on broken pottery, and she went into the bedroom. Defendant first claimed he heard the shotgun blast come from the bedroom as he sat at his computer. He told the officers about her problems with drugs and the law and claimed she had threatened suicide before. When Defendant was confronted with the physical evidence that was inconsistent with a suicide, and the officers told him they did not believe him, his story changed and he gave a second statement. He now said that while they were arguing the victim pulled the shotgun and she was shot accidentally when he tried to take it away from her. He denied any knowledge of the duct tape, blue towel, or potato, but subsequently admitted he put the towel on the gun trigger, claiming he did so to keep the victim from firing the shotgun. The State introduced these statements into evidence during its case in chief *after* Officer Perea testified as part of its effort to prove first degree murder. Defendant did not testify. However, Defendant introduced evidence of an incident in which the victim allegedly pulled the shotgun on another person to corroborate the self defense claim his attorney later made in closing argument. Under the circumstances, the victim's statement "next time you see me I'll be dead" did not tend to prove or disprove whether she killed herself. Furthermore, because of its inherent ambiguity, it did not tend to prove or disprove whether the victim attacked de-

fendant two months later, or whether she was accidentally killed. *Cf. Swavola*, 114 N.M. at 478, 840 P.2d at 1244 (stating that the victim's statement that he desired to reconcile with Defendant was relevant where self defense asserted because it reduced the likelihood he was the first aggressor).

{55} The statement is most easily construed as a belief by the victim that Defendant was going to kill her. "In general, where state of mind testimony is sought to be used in an attempt to demonstrate the truth of the underlying facts rather than solely to show state of mind, the evidence must be excluded." *Baca*, 120 N.M. at 389, 902 P.2d at 72 (quoting *United States v. Brown*, 490 F.2d 758, 763 n. 10 (D.C.Cir. 1973)). The rule itself *excludes* the admission of "a statement of memory or belief to prove the fact remembered or believed." Rule 11–803(C). In *Woodward*, 121 N.M. at 1, 908 P.2d at 231 the defendant was convicted of killing his estranged wife. Over his objection the victim's statement to a psychologist "[he] is going to kill me" was admitted into evidence. *Id.* at 8–9, 908 P.2d at 238–39. The Supreme Court held this was a "statement of memory or belief" rather than a statement of then-existing mental, emotional, or physical condition, and inadmissible. *Id.* at 9, 908 P.2d at 239. *Woodward* explains that while Rule 11–803(C) allows the admission of a declarant's then existing mental or emotional condition, the reason why the declarant has the state of mind is not admissible. The example given by the Supreme Court is from *Joe*, 8 F.3d at 1492–93, in which the defendant was convicted of killing his estranged wife. Eight days before the murder, she saw a doctor who treated her for rape. During the treatment, she told the doctor she was afraid because the defendant had threatened to kill her. *Id.* at 1491. Our Supreme Court approved the *Joe* holding that the first part of the statement that she was afraid was admissible as statement of then-existing mental, emotional, or physical condition but the statement that the defendant would kill her was a prohibited "statement of memory or belief." *Id.* at 1493; *Woodward*, 121 N.M. at 9, 908 P.2d at 239. *See also Baca*, 120 N.M. at 389, 902 P.2d at

71 (stating that while Rule 803(C) "allows hearsay statements that show the declarant's then existing mental condition, the rule does not permit evidence explaining why the declarant held a particular state of mind.") (citing *United States v. Liu*, 960 F.2d 449, 452, (5th Cir.1992) (a witness could properly testify that the declarant (the defendant) "was scared" and that he had a fear of getting killed, but not why)).

{56} I also conclude that the erroneous admission of the victim's hearsay statement was not harmless error. *See State v. McClaugherty*, 2003–NMSC–006, ¶ 32, 133 N.M. 459, 64 P.3d 486; *State v. Morales*, 2002–NMCA–052, ¶ 24, 132 N.M. 146, 45 P.3d 406. In *Baca*, the defendant's three-year-old daughter was found with defendant's dead wife. The State presented evidence that the defendant killed his wife then drove his dead wife and daughter to a remote area, where he ran over them. 120 N.M. at 386, 902 P.2d at 68. The daughter saw a social worker who was allowed to testify that the daughter made a nonverbal statement by nodding her head "yes" that she was afraid of her father when he asked her if she was afraid of him. *Id.* at 387, 902 P.2d at 69. Our Supreme Court held that admission of the hearsay statement was not only improper, but prejudicial, because of the danger that the jury would consider the statement as reflecting on the defendant's state of mind as a true indication of his intentions, actions, or culpability, rather than the victim's. *Id.* at 389–90, 902 P.2d at 71–72. Where there is a strong likelihood that the jury will make such an inference, "injurious prejudice" is "particularly evident." *Id.* (quoting *Brown*, 490 F.2d at 766). The prosecutor's opening words in closing argument were: "[Victim's] prophesy came true: 'The next time you see me you are going to find me dead.' She told Officer Josh Perea of the Los Lunas Police Department. And sure enough, the next time Josh Perea saw [Victim], he saw her dead." The prosecutor then highlighted the physical evidence which it argued demonstrated a first degree murder and Defendant's inconsistent statements about what occurred, while referring to the hearsay statement again. The inadmissible evidence was therefore used to demonstrate that Defendant killed the victim and to show his state of mind, not the victim's. This was not harmless error. *Baca*, 120 N.M. at 390, 902 P.2d at 72 (holding that the use of a hearsay statement was an attempt to demonstrate something other than the victim's state of mind and that it was unfairly prejudicial). In light of the foregoing conclusions, I need not address whether, or to what extent, *Crawford* applies.

{57} I would reverse Defendant's conviction and remand for a new trial excluding the victim's hearsay statement. Since the majority disagrees, I dissent.